Sedgwick, J. (dissenting).
One Greenleaf kept an account with defendant. He obtained on some pretext, *293 from Yermilye & Co., their check on the plaintiffs, dated February 15,1870, for $56.75, payable to his order. On the same day the plaintiffs certified that check. Green-leaf then altered it, so that it appeared of the date of 16th February, 1870, and for the payment of $15,006. He then deposited it to his account with the defendants, on 16th February, 1870. Greeuleaf drew checks on this account to the amount of $17,981.25. These checks being deposited by third parties in other banks, went to the clearing-house on the morning of the 17th. Then they were charged to defendants, and thence they were sent to defendants, when they were charged to Green-leaf’s account. A balance of $2,626.24 remained to Greeuleaf’s credit.
The altered check went also on the 17th to the clearing-house. From that, after being charged to plaintiffs, it went to plaintiffs’ bank. In the course of business a clerk of plaintiffs’, who had it with the other checks to examine if they were properly payable by plaintiffs, noticed that it had not been entered as a certified check in any book of the bank. He took it to the paying teller, who saw that the certification had been made by the receiving teller, and supposing that the latter had by accident omitted to make the usual entry when the check was certified, he, the paying-teller, entered it himself in a book, containing entries of certified checks, under date of February 17th, but stating the 16th as the date of the check. In due course the check was charged to Yermilye & Co., and with other checks on that account was sent to them for examination. It was about March 1st, when Yermilye & Co. returned to the bank the check as a forged and altered one. The plaintiff forthwith sent it to the defendants, and informed them of the character of the check, and demanded that the defend- ' « ants should return the difference between the amounts of the check unaltered and altered as money paid under a mistake. For this amount this action is brought.
*294 There can be no doubt that the plaintiffs being charged with the amount of the check at the clearing-house, and acquiescing in that disposition, was a payment of it to the defendant on the 17th February. The defendants, by the same kind of treatment of Greenleaf ’ s checks drawn on it, paid such checks and became bond-flde holders for value of the check in question.
The plaintiffs are under no obligation to the holder of a check to pay it. Upon its certifying a check, it becomes the principal debtor to the holder. The certificate is an admission of funds in hand -to meet the check, and an original agreement to pay such funds on presentation of the check. It is not an engagement to pay the debt of another (Mead v. The Merchants’ Bank, 25 N. Y. R. p. 148).
Here the check after it was altered still bore the genuine certification of the plaintiff. Of course whatever rights the defendants had were such as arose from its being in that state. We will treat it as if it had the appearance of an acceptance by the plaintiffs presented to it for payment. I am of opinion that the law conclusively presumes that a maker or acceptor of negotiable paper knows whether or not such paper presented to him for payment is his obligation. After he, having opportunity to see and examine it, has paid it to a bond-Jide holder for value, the holder has a right to retain the money paid.
Otherwise uncertainty will be brought into the dealings of merchants in respect of this peculiar class of evidences of debt. Every day millions of money are paid in this city upon commercial paper. If the rule is, that each one is bound to know his own obligation, there will be care and scrutiny in making payments and confidence in receiving them. Otherwise, the fact that there is opportunity to correct mistakes will be a temptation to carelessness, and a corresponding uncertainty on the part of those who receive money will restrict the use of it, lest there be reclamations,
*295 An exception to the general rule that money paid under a mistake may be re'covered, exists in the case of a drawee who is bound to know the handwriting of the drawer. If he accepts or pays a bill in the hands of a boml-ftde holder for value, he is concluded by the act, although the bill turns out a forgery. If he has accepted he must pay, and if he has paid he cannot recover the money (Goddard v. The Merchants Bank, 4 N. Y. R. p. 147). With much more force does such a rule apply to the case of an acceptance not genuine, paid by the acceptor, so far as is concerned the presumption as to the knowledge of genuineness. It would seem to be at the foundation of legal liability, that a man is absolutely bound to know whether or not it is his duty to pay commercial paper presented to him.
The Bank of Commerce v. Union Bank, 3 N. Y. p. 231, differed from the present case. A naked check was presented for payment. There had been no certification or acceptance of it. Ko obligation, or what purported to be, of the bank’s was presented to it, as to what it was, or whether the check was sufficient authority to it to make the payment. Kow apart from the duty of the bank to know its customers’ handwriting, if the check had been forged no authority was given by the customer to pay the money. The Court of Appeals said in the case, that in respect of the drawer’s signature the bank was bound to know if it was genuine, and if it chose to pay the money it could not recover it. But there was not the same reason for the presumption that the bank knew whether the check had been filled in by the drawer or under his direction. If we suppose that there was a presumption that the bank did know at the time it paid the check, if or not the filling was genuine, then no doubt the decision of the case would have been the logical consequence of the bank being "obliged to know if the check in all its parts was genuine, and its payment of the check on presentation would have been *296 held final. This is rather enforced by Goddard v. The Merchants Bank, 4 N. Y. p. 147. In that case the court held that if a party intervenes to take up a protested bill for the honor of the drawer, and sees it, and then pays it, he cannot recover the money back though it turns out a forgery ; but that as the plaintiff who held such a position in respect of the bill involved in that case had not seen it before paying, he could recover the money he paid. But Judge Buggies, who gave the opinion of the court in the Bank of Commerce v. The Union Bank, dissented, and thought that the plaintiff was bound to see and examine the bill, and to decide at his peril as to its being genuine.
There is authority for the position that money paid by a party on what purports to be his own obligation, after inspection or an opportunity for inspection, cannot be recovered back. In the Bank of The U. S. v. The Bank of Georgia, 10 Wheaton, 133, the court was unanimous. The decision was, that if a bank receive as genuine, forged notes purporting to be its own, and pass them to the credit of a depositor, it is bound by the credit thus given. Judge Stoby, delivering the opinion, said that the bank was bound to know its own paper and provide for its payment; that if it pays forged notes, i't must be deemed to adopt them ; that the holder of such notes is at a disadvantage; he has not the means of knowledge, nor the means of proof, that the bank has; that proof of actual damage may not always be within his reach, and that to confine the remedy to cases of that sort would fall far short of the actual grievance ; that the doctrine of negligence is not applicable to such cases.
He further said, considering then, as we do, that the doctrine is well established, that the acceptor is bound to know the handwriting of the drawer, and cannot defend himself from payment by a subsequent discovery of the forgery, we are of opinion that the *297 present case falls directly within the same principle. We think the defendants were bound to know their own notes, and having once accepted the notes in question as their own, they are concluded by their act of adoption, and cannot be permitted to set up the defence of forgery against the plaintiffs. The acceptance here meant was the receiving of them as cash. Judge Story said further: “ Here, d fortiori, the maker must be presumed and is bound to know his own notes. He cannot be heard to aver his ignorance, and when he received notes purporting to be his own without objection, it is an adoption of them as his own.”
Still more strongly yet does the rule apply to a case of an acceptance of a specific check having mere individuality, than the bank bills, the subject of the cited case.
It is suggested that the parties treated this as a check, and that the plaintiffs paid it, because of the drawer’s credit. The defendants, in presenting the paper, made no such discrimination, but relied on it as a whole. It was dealt with by the plaintiffs as its acceptance. The clerk, on receiving it from the clearing-house, looked upon it in that light, for he examined to see if it had been entered in the certified check-book. When he found it had not, he showed it to the paying teller, and stated the facts, and the latter entered it himself in the book. The reason of this was, that when the checks were certified they were entered in the book referred to, and from that at once charged against customers as paid ; so that when the bank paid a check certified by it, it followed the theory of the law—that it had kept and had on hand funds to meet it. Clearly, the paying teller regarded it as a purported obligation of the bank.
As a result, I am of the opinion that when the acceptance was presented to the plaintiff for payment by the defendant, who was a bona-fide holder for value, the former was conclusively presumed and was bound to *298 know whether such acceptance was its obligation. Therefore it cannot recover the money paid, as paid under a mistake of fact.
It cannot make a difference that the genuine certification being on the check, the alteration affected only the filling up, which might deceive the plaintiff, because the contract of acceptance involves the paper on which it is made. The plaintiff knew, in the sense in which we are speaking, that it had never placed its certification on that paper, and therefore it was not an acceptance binding on it.
We proceed to another view of the case. The recovery is placed upon the averment of a mistake of fact. The complaint says that the plaintiff, its officers and agents, were ignorant that the check had been fraudulently altered, etc. We have seen that the bank was not only dealing with a check but also with its acceptance or certification upon the check. If the bank did not know that the check had been altered, but did know that it had never certified the check, did it pay under a mistake of fact % The payment to the defendant operated on the acceptance as well as on the check. Can the plaintiffs say, We paid the acceptance, knowing at the time we had not made it; but as we did not know that the check was altered, we can recover for the mistake in paying the check ? I shall assume, that if the plaintiffs knew when they paid the certified check, that they had not certified it in the state in which it was presented, and yet paid it, the plaintiffs ought not to recover., because there was no mistake.
The plaintiffs being a corporation, actual knowledge of a fact (the want of which gives an action for money paid under mistake), as distinguished from notice or imputed or constructive knowledge, can only be possessed by it through the actual knowledge of natural persons—its officers or agents. To it is to be applied the general rule, that in such cases a neglect to use *299 means of knowledge will not take away the right of action. Forgetfulness "by an officer of a corporation may avail it in such a case. It perhaps may further "be said, that if an officer or agent who has knowledge is absent at the time of the payment, it would be held that for the purposes of such an action the corporation acted under a mistake. It seems evident, however, that a corporation cannot, for the purpose of getting the advantages that may arise from making payments in ignorance of the facts, so arrange its mode of business that one set of officers may have actual knowledge, at the same time and in the same place that another set of officers are acting under a mistake. This would be virtually a fraudulent device. It seems to me right to hold that if a corporation has empowered its officer to do for it a certain thing, and he does it, and thereafter the corporation acts in respect of a further stage of the business, through another authorized agent, when and while the first officer is present, that the actual knowledge of the latter as to the act done by him is that of the corporation. The officer in such case is not merely a means of knowledge which the corporation need not use. The corporation is the party in interest, who alleges the mistake and must prove it. It sees, and hears, and knows, and acts, through persons appointed by it for the various purposes of its business.
On the 15th February, its paying teller, the usual certifying officer, being absent, the receiving teller acted in his place by authority, and wrote his name on the check. On the 17th, the paying teller resumed his duty. All this time the corporation is acting. Virtually it says to the paying teller, We give you authority to say for us whether this acceptance is good or bad. At the same time, we infer, from the testimony, that the man whom it formally authorized to write the so-called acceptances is present.
Is not the corporation obliged to prove its want of *300 knowledge through that agent it appointed to act for it and get knowledge, and who is present %
To illustrate: we, as we have said, think the evidence shows that the receiving teller was at the bank when the check was paid. When he was on the stand, he was shown the check as altered, and was asked :
“ How do you know that this is the check that you certified for $56.78 %
“A. I saw it two or three times, and examined it pretty closely. I know it to be the same one.
“Q. How do you know that you did not certify a check for $15,006 %
“ A. Because every check certified is entered in a book at the time.”
If the rule, that the means of knowledge need not be used in such case, is to be applied to corporations, then, as a logical result, the president, cashier, and all the officers, but one of the tellers, may have knowledge of a matter, and be present, and yet their knowledge be not that of the corporation.
I do not think the plaintiff proved what its knowledge or ignorance as a matter of fact was, in respect to its having accepted the check, without calling the receiving teller and proving by him what at the time of the payment was his knowledge or ignorance.
For these.reasons, I am of opinion that the exception taken to the direction of the court to the jury to find for plaintiff should be sustained.
If, however, I err in thinking that, in such case, the plaintiff owed a positive legal duty to the defendant to know the facts, and the case is of that kind that it falls under the rules made by Kingston Bank v. Eltinge, 40 N. Y. R. 397, and the older kindred authorities, then I am of opinion that the other exception should not be sustained. It was to the refusal of the court to submit to the jury the question whether the defendants were injured by the laches or negligence of the plain *301 tiff, in notifying the defendants of the alleged mistake.
There was no negligence or laches under the authorities. Kingston Bank v. Eltinge, 40 JY. Y. 397, decides that, in the contingency of a mistake, a party need not show that he used care or diligence. An omission to use either is not negligence for which a plaintiff is responsible. If the plaintiff’s rights here are on this point to be measured by the paying teller’s want of knowledge at the time, then that paying teller was not bound to make inquiries of the receiving teller who wrote his name on the check when certifying it, nor to otherwise investigate the matter, hi or was it negligence on the part of the plaintiff, not to have entered the number of the check when it was certified in its unaltered state. If, up to the time of payment, the plaintiff was not bound to use care and diligence, the measure of its obligation remained the same until the discovery of the forgery (Canal Bank v. Bank of Albany, 1 Hill, 291). It not being bound to know or to find out, it would be impossible to make it its duty to notify, until knowledge came to it. On the discovery of the forgery the plaintiff at once informed the defendant of the fact. Since that time the defendant has not suffered additional damage. The mere fact of loss before that time by defendant, does not prevent a recovery (Kingston Bank v. Eltinge, 40 N. Y 397).
There was, therefore, no basis of fact in the case for the charge which the defendant requested the court to make.
For the reason first stated, I am of opinion that there should be a new trial, with costs to appellant to abide the event.